# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

BORIS IOFIS,

Plaintiff,

v.

WELLS FARGO BANK, N.A.,

Defendant.

Case No. 1:26-cv-04781-JLT-EGC

**FINDINGS AND RECOMMENDATIONS THAT DEFENDANT'S MOTION TO DISMISS BE GRANTED**

(Doc. 15)

FOURTEEN-DAY DEADLINE

On June 22, 2026, Defendant Wells Fargo Bank, N.A. removed this action filed by Plaintiff Boris Iofis from Fresno Superior Court. (Doc. 1).

On August 13, 2026, Defendant filed a Motion to Dismiss (the "Motion"), (Doc. 15 ("MTD")), which Plaintiff opposed on August 24, 2026, (Doc. 16). On August 3, 2026, Defendant filed a reply. (Doc. 18). The pending Motion was referred to the undersigned pursuant to 8 U.S.C. § 636(b)(1), (*see* Doc. 17), and is appropriate for decision without oral argument, *see* Local Rule 230(g).

For the following reasons, the undersigned will recommend granting the Motion without further leave to amend.

## I. BACKGROUND

### A. Factual Background

This action involves real property commonly known as 284 West Shaw Avenue, Clovis, California, 93612 ("the Property"). (Doc. 14 ("FAC.") ¶ 13). By Grant Deed recorded on March

8, 2019 in the Official Records of Fresno County, Winslow Properties I, LLC granted the Property to non-party Shaw LLC. (*Id.* ¶ 15).

On March 6, 2019, Plaintiff entered into a written Memorandum of Agreement with non-party Shaw LLC, under which Plaintiff was to advance $150,000 and in return be repaid with interest at twelve percent per annum by no later than April 15, 2020. (*Id.* ¶¶ 18, 27). Plaintiff then paid the $150,000 advance to non-party Shaw LLC, which was acknowledged as paid by non-party Shaw LLC. (*Id.* at ¶ 19). On the day the Memorandum of Agreement was executed, March 6, 2019, non-party Shaw LLC amended its Operating Agreement to admit Plaintiff as a member of the LLC. (*Id.* at ¶ 20). The new Operating Agreement listed Plaintiff's membership interest as 10.3 percent and stated Plaintiff had an entitlement to 6.82 percent of net proceeds. (*Id.* ¶ 23). The obligation to repay Plaintiff has not been satisfied. (*Id.* ¶¶ 27, 30). Moreover, non-party Shaw LLC did not record the March 6, 2019 Memorandum of Agreement, meaning Plaintiff did not at any time have a recorded interest in the Property.

On December 24, 2019, the manager of Shaw LLC emailed Plaintiff with the subject line "Crunch Refi Update." (*Id.* ¶ 40). That email "informed Plaintiff that a refinance of the Property was closing, that 'it [was] now time for payout,' and that the sum of $157,249.32 was 'due through the end of jan) to [Plaintiff] which includes [Plaintiff's] principle plus 12% interest," that Plaintiff's "equity is retained until sale so [Plaintiff could] expect an additional 174 per month until sale," and that "the bank appraised the property for 8.4M." (*Id.* ¶ 40). No lender was identified in that email. (*Id.*).

On or about February 12 and 13, 2020, Defendant Wells Fargo made a $10.6 million commercial loan in a bundled two-property sale, which included the Property. (*Id.* ¶ 42). On February 13, 2020, a Deed of Trust, Assignment of Leases and Rents, Security Agreement and Fixture Filing dated February 11, 2020 was recorded in the Official Records of Fresno County as Document number 2020-0019139, naming Shaw LLC as trustor, Fidelity National Title Company as trustee, and Wells Fargo as beneficiary. (*Id.* ¶ 49). Plaintiff's existing interest was not disclosed in the loan application, did not appear anywhere in the loan documents, and was not otherwise made known to Wells Fargo by Shaw LLC or its manager. (*Id.*).

Plaintiff was never paid the $157,249.32. (*Id.* ¶ 51). On the other hand, loan proceeds were dispersed to Shaw LLC, (*id.* ¶¶ 43–44), and payments were made to other "[s]econd-position investor positions" and "third-position investor positions" against the Property and "second-position investor positions" against the other property that was cross-collateralized with the Property, (*id.* ¶ 59).

In or about April 2023, Plaintiff learned of the refinancing of the Property. (*Id.* ¶ 77). On May 21, 2025, Plaintiff obtained a property report on the Property, which disclosed the existence, date, amount, and beneficiary of the deed of trust recorded against the Property. (*Id.* ¶ 84). Plaintiff also then obtained the Fidelity National Title Company Closing Documents. (*Id.*). On May 29, 2025, Plaintiff gave written notice to Defendant. (*Id.* ¶ 94). Defendant responded that day requesting a copy of the Amended Memorandum of Agreement with each party's signature. (*Id.* ¶ 96). On October 15, 2025, Plaintiff wrote to Defendant's Managing Counsel, restating the notice, identifying the loan at issue, stating that the loan had been transferred to a servicer that directed him back to Defendant, and that he was a seventy-five-year-old disabled person. (*Id.* ¶ 97). Defendant acknowledged receipt on October 17, 2025. (*Id.* ¶ 97). On October 24, 2025, Defendant responded indicating that they did not have authorization to release information to Plaintiff. (*Id.* ¶ 99). On December 17, 2025, Plaintiff wrote again indicating he was not requesting disclosure of confidential borrower information, but instead was writing to place on record Defendant's post-notice status and conduct. (*Id.* ¶ 102). On January 5, 2026, Defendant responded that "after extensive research, we are unable to identify any loans that match the criteria provided" and that Plaintiff should "seeks assistance out of Wells Fargo to resolve [his] concerns related to the other party." (*Id.* ¶ 103).

Defendant did not retain the loan at issue as the loan was assigned to Wilmington Trust, National Association as Trustee for the benefit of the registered holders of Wells Fargo Commercial Mortgage Trust 2020-C58. (*Id.* ¶ 107). That assignment was effective as of December 16, 2020. (*Id.*).

**B. Procedural Posture**

Plaintiff, proceeding *pro se*, initiated this action in Fresno Superior Court and Defendant

removed the action on June 22, 2026. (Doc. 1). Plaintiff filed a First Amended Complaint ("FAC"), which was lodged on July 30, 2026 and then filed on August 5, 2026. (*See* Docs. 11, 14). The FAC brings two claims alleging Financial Elder Abuse pursuant to California Welfare & Institutions Code §§ 15610.30(a)(l),(a)(2), (b), (c) and a quasi-contract and restitution claim. (FAC ¶¶ 124–56).

On August 13, 2026, Defendant filed the motion. (Doc 15). On August 24, 2026, Plaintiff filed an opposition. (Doc. 16). On September 3, 2026, Defendant filed a reply. (Doc. 18).

## II. MOTION TO DISMISS PLAINTIFF'S COMPLAINT

### A. Legal Standard

A motion to dismiss brought pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted "tests the legal sufficiency of a claim," and dismissal is "proper if there is a 'lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011). "To survive a motion to dismiss, the plaintiff's complaint 'must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face."'" *Boquist v. Courtney*, 32 F.4th 764, 773 (9th Cir. 2022) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

"At this stage, the Court must take all well-pleaded allegations of material fact as true and construe them in the light most favorable to the non-moving party." *Great Minds v. Office Depot, Inc.*, 945 F.3d 1106, 1109 (9th Cir. 2019). "[D]etermining whether a complaint states a plausible claim [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 663–64. "'[I]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory.'" *Twombly*, 550 U.S. at 562.

In resolving a Rule 12(b)(6) motion, the Court's review is generally limited to the "allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1030–31 (9th Cir. 2008) (internal quotation marks omitted). "[C]onclusory allegations of law and

unwarranted inferences are insufficient to defeat a motion to dismiss for failure to state a claim." *Caviness v. Horizon Cmty. Learning Ctr., Inc.*, 590 F.3d 806, 812 (9th Cir. 2010).

To the extent the pleadings can be cured by the allegation of additional facts, the plaintiff should be afforded leave to amend. *Cook, Perkiss and Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 247 (9th Cir. 1990); *Crowley v. Bannister*, 734 F.3d 967, 977 (9th Cir. 2013). Federal Rule of Civil Procedure 15(a)(2) advises that "[t]he court should freely give leave when justice so requires." In general, a pro se litigant will be granted an opportunity to amend deficient pleadings ordinarily. *Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014). However, while the Ninth Circuit has an extremely liberal policy favoring leave to amend, *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990), a court may deny leave to amend the complaint if doing so would be futile, *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

**B. Analysis**

The undersigned observes that Defendant alleges that Plaintiff's claims are time-barred by the relevant statute of limitations. (MTD 12–14). Because the undersigned finds that the complaint fails to state a claim, the undersigned will not address the statute of limitations issue.

Turning to the merits of the Motion, the undersigned reviews each of Plaintiff's claim in turn.

1. <u>Elder Abuse</u> (California Welfare & Institutions Code §§ 15610.30)

Plaintiff brings two claims for elder abuse based on two theories of liability pleaded in the alternative, the first based on a theory of post-retention taking and the second on a theory of a direct taking. (FAC ¶¶ 140–48). Defendant contends that Plaintiff has not stated a claim as to claims one and two. (MTD 15–17). The undersigned agrees with Defendant.

There are three types of financial elder abuse under Cal. Welfare and Institutions Code § 15610.30: (1) taking real or personal property of an elder for a wrongful use or with intent to defraud; (2) assisting in the same; and (3) taking real or personal property of an elder by undue influence. *Levin v. Winston-Levin*, 39 Cal. App. 5th 1025, 1034 (2019) (internal citations quotes omitted). Put another way, a claim for financial elder abuse requires one of the following: "(1)

taking of property for a 'wrongful use,' (2) taking of property with intent to defraud, or (3) taking of property by 'undue influence.'" *Johnson v. King*, No. CV094183DSFFMOX, 2009 WL 10675723, at *2 (C.D. Cal. Aug. 31, 2009).

The undersigned finds that Plaintiff has not stated a claim as to either claim for elder abuse. To state a claim, Plaintiff must either alleged a taking "for a wrongful use," "with intent to defraud," or "by undue influence." Plaintiff expressly disclaims any theory of fraud or undue influence. (FAC ¶ 38 ("Plaintiff does not allege that Wells Fargo made any misrepresentation to him, that Wells Fargo acted with an intent to defraud, or that Wells Fargo exercised undue influence.")). Therefore, Plaintiff relies solely on the theory that Defendant took Plaintiff's property "for a wrongful use."

As to Plaintiff's first theory based on "post-notice retention," the undersigned observes that "[p]roperty is taken for a wrongful use when the 'entity . . . retains the property and the . . . entity knew or should have known that this conduct is likely to be harmful to the elder.'" *Durbin v. Hartford Life Ins. Co.*, No. 13CV52 BEN JLB, 2014 WL 3950657, at *7 (S.D. Cal. Aug. 11, 2014) (citing Cal. Welf. & Inst. Code § 15610.30(b), *aff'd*, 647 F. App'x 825 (9th Cir. 2016). Here, Plaintiff has not stated a claim that Defendant has wrongfully retained Plaintiff's property for several reasons.

First, Plaintiff's own allegations state that Defendant "did not retain the loan it originated," (FAC ¶ 107), and that assignment of the loan occurred prior to Plaintiff providing notice of the existence of the Memorandum of Agreement to Defendant, (*id.* ¶¶ 94–104).

Second, Plaintiff alleges that the loan at issue dispersed funds to Shaw, LLC via an escrow account. (*Id.* ¶¶ 43–44). Therefore, it is not Defendant who has "retained" any "benefit at a Plaintiff's expense," but instead Shaw LLC, a non-party in which Plaintiff is in direct privity. Any obligation for Defendant to pay Plaintiff the amount owed to Plaintiff by non-party Shaw LLC from the proceeds of Defendant's disbursement of loan proceeds, would mean that Defendant would be at a net loss in the same amount as Plaintiff alleges he has experienced. Put another way, if Plaintiff were to succeed on this claim, Defendant would have, in essence, paid the sum Plaintiff alleges he is owed by Defendant twice—once to non-party Shaw LLC who had an alleged

contractual obligation to pay Plaintiff and once to Plaintiff. Because Defendant dispersed loan proceeds to non-party Shaw LLC, a party with an alleged contractual obligation to pay Plaintiff the amount Plaintiff seeks from Defendant, Defendant cannot be said to have "retained" Plaintiff's property.

Finally, Plaintiff affirmatively disclaims any allegation that Defendant "ever received or held any of his funds, or that Wells Fargo played any role in the concealment of his interest by Shaw LLC and its Manager." (*Id.* ¶ 119).

As to Plaintiff's second theory, any allegations "on information and belief" that Defendant should have had notice of Plaintiff's interest are belied by Plaintiff's own allegations that "on information and belief . . . whatever organizational documents and schedule of liabilities Wells Fargo obtained in connection with [the loan], those documents omitted Plaintiff," (*id.* ¶ 69), and "Plaintiff's interest was not disclosed in the loan application, does not appear anywhere in the loan documents, and was not otherwise made known to Wells Fargo by Shaw LLC or its Manager," (*id.* ¶ 50). Those allegations are patently inconsistent with Plaintiff's theory as to his second claim that "Wells Fargo should have known" of Plaintiff's interest at the time the loan was executed or at the time of the assignment. (*Id.* ¶ 123).

In sum, the undersigned finds that Plaintiff has not stated a claim as to his first and second claims and that the Motion should be granted as to those claims.

2. <u>Quasi-Contract and Restitution</u>

Plaintiff's third claim is for quasi-contract and restitution. (FAC ¶¶ 149–56). Defendant contends that Plaintiff has not stated a quasi-contract claim. (MTD 17–19). The undersigned agrees with Defendant.

To state a quasi-contract claim, a Plaintiff must plausibly allege the following elements: "(1) a defendant's receipt of a benefit and (2) unjust retention of that benefit at the plaintiff's expense." *MH Pillars Ltd. v. Realini*, 277 F. Supp. 3d 1077, 1094 (N.D. Cal. 2017).

Plaintiff's theory of liability as to this claim seems to be that Defendant received a benefit at Plaintiff's expense at the time the loan was executed and that, despite the assignment of that loan before Plaintiff gave Defendant notice of his interest, Defendant's receipt of consideration

for that assignment constitutes retention of the benefit that was gained at Plaintiff's expense. (*See* FAC ¶¶ 149–56). This theory is untenable for several reasons.

Plaintiff's complaint itself concedes that Defendant "never received or held [Plaintiff's] funds." (FAC ¶ 119). For the reasons articulated above, Plaintiff has not plausibly alleged that Defendant has "retained" any benefit at Plaintiff's expense. Therefore, the undersigned finds that Plaintiff has not stated a claim as to his quasi-contract claim and will recommend that Defendant's motion to dismiss be granted as to this claim.

**C. Leave to Amend**

When dismissing a complaint, the Ninth Circuit has stated that "leave to amend should be granted unless the district court determines that the pleading could not possibly be cured by the allegation of other facts." *Bly–Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001) (internal quotation marks omitted); *Chang v. Chen*, 80 F.3d 1293, 1296 (9th Cir. 1996). However, where amendment would be futile, leave to amend should not be granted. *See Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995).

Here the undersigned finds that Plaintiff's own allegations clearly preclude liability as to both his elder abuse and quasi-contract claims. Therefore, the undersigned finds that leave to amend would be futile and recommends that Plaintiff not be granted leave to amend.

## III. CONCLUSION

For the aforementioned reasons, the undersigned RECOMMENDS that Defendant's Motion to Dismiss the First Amended Complaint, (Doc. 15), be GRANTED, without further leave to amend.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen (14) days of service of this recommendation, any party may file written objections to these findings and recommendation with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation." The district judge will review the magistrate judge's findings and recommendation pursuant to 28 U.S.C. § 636(b)(1)(C). The Court will not consider exhibits attached to the Objections. To the extent a

party wishes to refer to any exhibit(s), the party should reference the exhibit in the record by its CM/ECF document and page number, when possible, or otherwise reference the exhibit with specificity. Any pages filed in excess of the fifteen (15) page limitation may be disregarded by the District Judge when reviewing these Findings and Recommendations pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 838–39 (9th Cir. 2014). This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

IT IS SO ORDERED.

Dated: **September 18, 2026**

UNITED STATES MAGISTRATE JUDGE